<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN P. CARNEY and WILLIAM C. GUMPPER, JR., on behalf of themselves and all others similarly situated, | Civil Action No. 15-260-BRM-DEA |
| Plaintiffs, | |
| v. | |
| RUSSELL P. GOLDMAN, P.C., et al., | **OPINION** |
| Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(1), filed by Defendant Russell P. Goldman, P.C. ("Goldman" or the "Defendant"). (ECF No. 31.) Plaintiffs Brian P. Carney ("Carney") and William C. Gumpper, Jr. ("Gumpper") (collectively, the "Plaintiffs") oppose the motion. (ECF No. 33.) The Court heard oral argument on December 21, 2016. For the reasons set forth below, Defendant's motion is **DENIED**.

### I.   BACKGROUND[1]

### A.   PROCEDURAL HISTORY

Plaintiffs commenced this putative class action on January 13, 2015 (ECF No. 1), alleging Goldman, a law firm engaged by the State of New Jersey to collect defaulted student loan debts, violated the Fair Debt Collection Practices Act, 15. U.S.C. §1692, *et seq.* ("FDCPA"). Goldman

---

[1] The facts set forth in this Opinion are taken from Plaintiffs' Amended Complaint, the parties' briefs and related filings.

filed an Answer to Plaintiffs' Complaint on February 19, 2015 (Dkt. No. 5), and the parties began to engage in discovery.

In October 2015, Carney filed in the United States Bankruptcy Court a voluntary petition under Chapter 13, Title 11 of the U.S. Code. (ECF Nos. 12-14.) As a result, this case was stayed as to Carney. (ECF No. 15.) By further Order, dated November 12, 2015, the entire case was stayed pending the United States Supreme Court's decision in *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540 (2016). (ECF No. 20.)

The Supreme Court issued its decision in *Spokeo* on May 16, 2016. Shortly thereafter, the Honorable Freda L. Wolfson, U.S.D.J., granted Plaintiffs leave to file an amended complaint and set a deadline for Defendants to file an answer or motion to dismiss. (ECF No. 24.) Plaintiffs filed their Amended Complaint on June 17, 2016. (ECF No. 27.) This motion followed.

**B.   FACTUAL BACKGROUND**

From 2007 to 2010, Carney borrowed approximately $92,000.00 from the New Jersey Higher Education Student Assistance Authority ("HESAA") in four (4) separate loan transactions. (Am. Compl. (ECF No. 27) at ¶¶ 32-40, Exs. A-D.) Gumpper, Carney's step-father, cosigned three (3) of the loans, in the total amount of approximately $69,000.00. (*Id.*; Exs. A-C.)

In connection with these loans, Carney and Gumpper each signed a promissory note(s) in favor of HESAA which states, in pertinent part, as follows: "I will pay all charges, collection costs and all other costs that are permitted under this Note for the collection of this loan, which the lender or subsequent holder of this Promissory Note incurs in collecting this loan." (Am. Compl. at ¶ 72.)

At some point, Plaintiffs apparently stopped making payments on the loans and, "[o]n or before June 7, 2014, HESAA placed and/or referred [Plaintiffs'] alleged obligations with Goldman

2

for the purpose of collection." (ECF No. 27 at ¶ 52.) Consequently, on June 27, 2014, Goldman sent demand letters to Carney and Gumpper seeking to collect the amounts they allegedly owed to HESAA. (*Id*. at ¶¶ 53-58, Exs. E-F.)[2] The letter to Carney asserted the amount of $139,757.52 was due and owing to HESAA, "which includes interest and collection costs." (*Id*. at ¶¶ 54-55, Ex. E.) Similarly, the letter to Gumpper asserted the amount of $110,251.01 was due and owing to HESAA, "which includes interest and collection costs." (*Id*. at ¶¶ 57-58, Ex. F.) Goldman sent a third letter to Carney on or about July 23, 2014. (*Id*. at ¶¶ 59-60; Ex. G.) Like the prior letters, the July 23, 2014 letter indicated a past due amount of $139,757.52, which included "collection costs" of $21,211.03. (*Id*.)

Plaintiffs allege "[t]he collection cost of $21,211.03 represents the contingency fee agreement between Goldman and HESAA rather than a pre-paid, flat fee." (*Id*. at ¶71.) Plaintiffs further allege that "[a]t the time Goldman sent the June 27, 2014 letters, Plaintiffs did not owe HESAA attorneys' fees in the amount of $21,211.03" because "Goldman had not billed HESAA for attorney fees, . . . HESAA had not paid attorneys' fees to Goldman," and HESAA had not been awarded collection costs or attorneys' fees by any Court in any jurisdiction, relating to the alleged debts. (*Id*. at ¶¶ 73-78.)

Several months after sending these demand letters, Goldman filed a complaint against Plaintiffs in the Superior Court of New Jersey, Law Division, Middlesex County, under Docket No. L-5827-14 (the "State Court Action"). (Am. Compl. at ¶ 80; Ex. H (Goldman's complaint in the State Court Action, dated September 25, 2014).) In the State Court Action, Goldman asserted Carney owed an unpaid "principal balance [] of $111,637.00, together with accrued unpaid interest

---

[2] Goldman allegedly "sent collection letters attempting to collect debts to more than 50 consumers residing within the State of New Jersey similar to the letter[s]" received by Plaintiffs. (Am. Compl. at ¶ 84.)

3

of $8,855.31" and requested "an award for collection costs and attorneys' fees . . . of $21,211.03." (Am. Compl. at Ex. H, ¶¶ 3-4.) Goldman also sought to recover from Gumpper the amount of "$87,837.12, together with accrued unpaid interest" and "an award for collection costs and attorneys' fees . . . of $16,689.05." (*Id*. at ¶¶ 6-7.) In the Superior Court Action, Goldman was awarded Final Judgment by Default on September 28, 2015, and Judgment was entered against Carney for $149,122.91 and against Gumpper for $117,415.45. (Declaration of Russell P. Goldman (ECF No. 31-1) at ¶ 4; Ex. B.)

To date, neither Carney nor Gumpper has made any payment to Goldman. (ECF No. 27 at ¶¶ 69-70.) However, "members of the class have made payment of attorneys' fees, which were not due and owing." (*Id*. at ¶ 83.)

## II. LEGAL STANDARD

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo*, 136 S. Ct. at 1547. "The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (citing *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

A motion to dismiss for lack of standing is properly brought pursuant to Fed. R. Civ. P. 12(b)(1), because standing is a matter of jurisdiction. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citing *St. Thomas-St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F. 3d 232, 240 (3d Cir. 2000) ("The issue of standing is jurisdictional."); *Kaufman v. Dreyfus Fund, Inc.*, 434 F. 2d 727, 733 (3d Cir. 1970) ("[W]e must not confuse requirements necessary to state a cause of action . . . with the prerequisites of standing.")).

"Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Ballentine*, 486 F. 3d at 810 (citing *Warth v. Seldin,* 422 U.S. 490 (1975); *Storino v. Borough of Point Pleasant Beach,* 322 F. 3d 293, 296 (3d Cir. 2003)). Nevertheless, on a motion to dismiss for lack of standing, the plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny County Court of Common Pleas,* 75 F. 3d 834, 838 (3d Cir. 1996) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)). However, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan,* 504 U.S. at 561.

Article III "standing consists of three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id*. (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

As in *Spokeo*, "[t]his case primarily concerns injury in fact, the '[f]irst and foremost' of standing's three elements. *Spokeo*, 136 S. Ct. at 1547 (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'"

5

*Id*. (citations omitted). "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" *Id*. "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id*. (explaining that "[w]hen we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term – 'real,' and not 'abstract.'"). "Concreteness, therefore, is quite different from particularization." *Id*.

In *Spokeo*, the Supreme Court held that intangible injuries can be concrete and, under certain circumstances, the risk of real harm can also satisfy the requirement of concreteness. *Spokeo*, 136 S. Ct. at 1549. However, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id*. As such, a plaintiff may "not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id*. (citing *Summers*, 555 U.S. at 496 ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation … is insufficient to create Article III standing")) (additional citation omitted).

## III.   DECISION

Defendant argues that Plaintiffs "cannot satisfy th[e] requirement [for Article III standing], since they received completely accurate information from Goldman and, therefore, cannot establish any actual injury." (ECF No. 31-2 at 6.)[3] According to Defendant, "[t]he information it provided in the demand letters was completely consistent with the amount claimed by the State in the Superior Court [Action] and with the judgment entered by the Superior Court. Since the receipt of truthful information cannot cause any injury under the FDCPA, Carney and Gumpper have no

---

[3] Although couched in terms of standing, Defendant's arguments seem to focus primarily on the merits of Plaintiffs' claims, which are more appropriately raised in the context of a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Because Defendant moved to dismiss only for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1) (*see* ECF No. 31), the Court will only consider Defendant's arguments as they relate to standing.

standing to sue. . ." (*Id*. at 5.) Goldman contends Plaintiffs only "suffered 'an informational injury' and 'a risk of economic injury'" because they never made a payment to Goldman. (*Id*. at 4, 8.)[4] Goldman argues "[t]he alleged 'risk of economic injury' is mere speculation about the possibility of bad things that might happen in the future, and a long way from the actual, concrete injury required by *Spokeo*." (*Id*. at 9, n.2.)

Plaintiffs respond that, pursuant to "the agreement[s] between Plaintiffs and HESAA, the subject collection costs had not incurred at the time Defendant sent its debt collection letter." (ECF No. 33 at 1.) Rather, Plaintiffs contend "the collection costs were a contingency fee and, at the time the debt collection letter was sent by Defendant, Plaintiffs did not owe HESAA attorney fees, Defendant had not charged HESAA attorney fees, HESAA had not paid Defendant a commission, HESAA had not been awarded collection costs by any court and[] no action had been filed seeking attorney fees." (*Id*. (citation omitted).) Indeed, Plaintiffs note "Defendant was actually required to commence a separate court action, and obtain a judgment from a court, in order to be granted these very same collection costs . . . and it did not obtain a judgment until *over a year* [] after Defendant sent Plaintiffs the subject debt collection letter." (*Id*. (emphasis in original, citation omitted).) Essentially, "Plaintiffs allege that Defendant may, at some point, have been entitled to collection costs, just not at the time it sent its misleading debt collection letter to Plaintiffs." (*Id*. at 13.) Finally, Plaintiffs argue they have Article III standing because they suffered a concrete injury "[d]ue to Defendant's failure to provide Plaintiffs with the true and accurate information concerning the amount of the debt it was attempting to collect" and "were exposed to the risk of

---

[4] At the same time, however, Goldman concedes that "members of the class allegedly have made payments of improper attorney's fees." (ECF No. 31-2 at 4.)

an economic injury due to the risk [of] paying collection costs that had not been incurred, not awarded by any court and were not due." (*Id.* at 15-16.) This Court agrees.

The Third Circuit recently discussed *Spokeo's* impact on Article III standing in a case related to the unauthorized tracking and dissemination of the online activity of a class of children. *See In re Nickelodeon Consumer Privacy Litig.*, 827 F. 3d 262 (3d Cir. 2016). There, the defendant argued that because the children could not show injury beyond the statutory violations, they could not meet the injury-in-fact requirement for Article III standing. *Id*. at 272-73. The Third Circuit interpreted *Spokeo* to say that "even certain kinds of 'intangible' harms can be 'concrete' for purposes of Article III. . . . What a plaintiff cannot do . . . is treat a 'bare procedural violation . . . [that] may result in no harm' as an Article III injury-in-fact." *Id*. at 273-74 (quoting *Spokeo*, 136 S. Ct. at 1550). The Third Circuit also observed that "in some cases an injury-in-fact may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Id*. at 273-74 (explaining "[i]ntangible harms that may give rise to standing include harms that 'may be difficult to prove or measure,' such as unlawful denial of access to information subject to disclosure.") (citations omitted). Specifically, the Third Circuit addressed the Supreme Court's deference to Congress, noting that "*Spokeo* directs us to consider whether an alleged injury-in-fact 'has traditionally been regarded as providing a basis for a lawsuit,' [and] Congress's judgment on such matters is . . . 'instructive and important.'" *Id*. at 273 (quoting *Spokeo*, 136 S.Ct. at 1549).

Ultimately, the Third Circuit found that "[n]one of these pronouncements calls into question whether the plaintiffs in th[at] case ha[d] Article III standing." *Id*. at 274. The Third Circuit explained:

> The purported injury here is clearly particularized, as each plaintiff complains about the disclosure of information relating to his or her online behavior. While perhaps "intangible," the harm is also concrete in the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful disclosure of legally protected

> information. Insofar as *Spokeo* directs us to consider whether an alleged injury-in-fact "has traditionally been regarded as a providing a basis for a lawsuit," *Google* [*Inc. Cookie Placement Consumer Privacy Litig.*, 806 F. 3d 125 (3d Cir. 2015)] noted that Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private.

*Id*. at 274.

Like the statute at issue in *Nickelodeon*, Congress enacted the FDCPA as a result of "abundance evidence of the use of abusive, deceptive, and unfair debt collection practices" and the inadequacy of existing laws and procedures designed to protect consumers. 15 U.S.C. § 1692(b). The stated purpose of the FDCPA was to eliminate abusive debt collection practices and to promote further action to protect consumers against debt collection abuses. *Id*. "The right congress sought to protect in enacting this legislation was therefore not merely procedural, but substantive and of great importance." *Blaha v. First National Collection Bureau*, 16-cv-2291 (D.N.J. Nov. 10, 2016) Slip Op., at *16. Further, the harm claimed by Plaintiffs is precisely that which the FDCPA was intended to guard against. *Id*. (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982)).

Here, Plaintiffs allege that Defendant made false, deceptive, and misleading statements and representations, and employed unfair and deceptive means, to collect or attempt to collect a debt in violation of the FDCPA by "demanding an amount for collection cost[s] in its initial and subsequent collection letters to Plaintiffs and other[s] similarly situated when said collection costs were not yet, if at all, due" to Goldman or HESAA. (ECF No. 27 at ¶ 97.) Plaintiffs allegedly "suffered an informational injury" and "a risk of economic injury due to Goldman's violation of [Section] 1692e of the FDCPA." (*Id*. at ¶¶ 95-96.) The Court finds Plaintiffs' alleged an injury-in-fact is sufficient to confer Article III standing.

District Judge Walls of this Court was recently confronted with a similar situation as here, and arrived at the same conclusion. *See Blaha*, 16-cv-2291 (Slip Op., Nov. 10, 2016). In *Blaha*, like here, defendants moved to dismiss plaintiff's FDCPA claim arguing the "allegations that Defendants committed statutory violations of the FDCPA do not meet the injury-in-fact requirement." *Id*. at 14. There, like here, "Defendants stress[ed] that Plaintiff can only show a 'hypothetical and speculative' injury because she does [not] claim to have relied on the allegedly misleading statements made in the [Defendants' collection] letter and she never made any payments to Defendants as a result of the letter." *Id*. After considering the legislative history of the FDCPA, among other things, "the Court [was] unpersuaded by the argument that Plaintiff has alleged a bare procedural violation that does not give rise to an injury-in-fact" and, accordingly, denied defendants' motion to dismiss for lack of standing. *Id*. at 15-16.

This Court likewise finds Plaintiffs have sufficiently alleged an injury-in-fact harm for purposes of Article III standing. The purported injury here is clearly particularized, as Carney and Gumpper each complain that Defendant made false, misleading and deceptive representations to them "[b]y representing to Plaintiffs . . . that an amount was due for collection costs when said collection costs were not yet, if at all, due. . . ." (ECF No. 27 at ¶¶ 97-98.) While perhaps "intangible," the harm is also concrete in the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful use of false, deceptive and misleading representations in connection with Defendant's attempts to collect a debt owed by Plaintiffs. Insofar as *Spokeo* directs the Court to consider whether an alleged injury-in-fact "has traditionally been regarded as providing a basis for a lawsuit," Congress has long provided plaintiffs with the right to seek redress from debt collectors for the very conduct alleged here. *See Nickelodeon*, 827 F. 3d at 274. Indeed, in the short time since *Spokeo* was decided, district and circuit courts around the country have rejected similar

10

challenges to standing in FDCPA cases. *See, e.g., Blaha*, 16-cv-2291 (Slip Op., Nov. 10, 2016); *Church v. Accretive Health, Inc.*, 654 Fed. App'x 990 (11th Cir. 2016); *Prindle v. Carrington Mort. Servs., LLC*, 3:13-cv-1349, 2016 WL 4369424 (M.D. Fla. Aug. 16, 2016); *Daubert v. Nra Group, LLC*, 3:15-cv-718, 2016 WL 4245560 (M.D. Pa. Aug. 11, 2016); *Lane v. Bayview Loan Servicing, LLC*, 15-cv-10446, 2016 WL 3671467 (N.D. Ill. July 11, 2016); *Quinn v. Specialized Loan Servicing, LLC*, 16-cv-2021, 2016 WL 4264967 (N.D. Ill. Aug. 11, 2016).

The FDCPA unambiguously grants recipients of debt-collection letters (such as Plaintiffs) a right to be free from abusive collection practices. In other words, the FDCPA "create[s] a private duty owed personally to" a consumer to refrain from using false, deceptive, or misleading means or representations in attempting to collect a debt. *See Spokeo*, 136 S. Ct. at 1554 (Thomas, J., concurring). Because Plaintiffs have a personal statutory right to be free from abusive debt-collection practices, and because Plaintiffs have alleged facts plausibly showing Defendant violated that right, Plaintiffs "need not allege any additional harm." *See id*. at 1549 (emphasis omitted).

In sum, the Court finds Plaintiffs have sufficiently pled an injury-in-fact that is both particularized and concrete, and meets the requirements of Article III. As Plaintiffs have standing to bring their claims, Defendant's Motion to Dismiss for lack of subject matter jurisdiction must be **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **DENIED**. An appropriate Order will follow.

**Date: December 22, 2016**　　　　　　　　　　　　　　*/s/ Brian R. Martinotti*　　　　　
　　　　　　　　　　　　　　　　　　　　　　　　　　**HON. BRIAN R. MARTINOTTI**
　　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**