NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ———————————————————— : | |
| BRIAN P. CARNEY and WILLIAM C. : | |
| GUMPPER, JR., : | |
| : | |
|        Plaintiffs, : | Civil Action No. 15-00260-BRM-DEA |
| : | |
|        v. : | |
| : | **OPINION** |
| RUSSELL P. GOLDMAN, P.C. and : | |
| JOHN DOES 1-25, : | |
| : | |
|        Defendants. : | |
| ————————————————————: | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are: (1) Defendant Russell P. Goldman, P.C.'s ("Goldman") Motion for Summary Judgment (ECF No. 53); and (2) Plaintiffs Brian P. Carney ("Carney") and William C. Gumpper, Jr.'s ("Gumpper") (together, "Plaintiffs") Motion to Certify Class. (ECF No 54.) All motions are opposed. (ECF Nos. 54 and 61.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, Goldman's Motion for Summary Judgment is **DENIED** and Plaintiffs' Motion to Certify Class is **GRANTED**.

## I. BACKGROUND

From 2007 to 2010, Carney borrowed $92,000 from the New Jersey Higher Education Student Assistance Authority ("HESAA"). (Goldman Stat. of Undisputed Mat. Facts (ECF No. 53-1) ¶ 1 and Pls.' Resp. to Goldman Stat. of Facts (ECF No. 57-1) ¶ 1.) Gumpper, Carney's stepfather, cosigned three of those loans; the total principal amount of his cosign is $69,000. (ECF No. 53-1 ¶ 2 and ECF No. 57-1 ¶ 2.) In connection with these loans, Carney and Gumpper each

1

signed promissory notes in favor of HESAA which state, in pertinent part: "I will pay all charges, collection costs and all other costs that are permitted under this Note for the collection of this loan, which the lender or subsequent holder of the Promissory Note incurs in collecting this loan." (Am. Compl. (ECF No. 27) ¶ 72; ECF No. 53-1 ¶ 3; ECF No. 57-1 ¶ 3.)

At some point, Plaintiffs stopped making payments on the loans and HESAA retained Goldman as its attorney for the purpose of collection of those debts. (ECF No. 53-1 ¶ 4 and ECF No. 57-1 ¶ 4.) On June 27, 2014, Goldman sent Plaintiffs demand letters stating the "amount due" as $130,757.52 for Carney and $110, 251.01 for Gumpper (the "June 27 Letters"). (ECF No. 27 at Ex. E and Ex. F.) The letters further stated: "There remains due a balance as shown above, which includes interest and collection costs." (ECF No. 27 at Ex. E and Ex. F.) The collection costs represent the contingency fee agreement between Goldman and HESAA. (ECF No. 27 ¶ 71.)

On July 20, 2014, Carney disputed the validity of his debt. (ECF No. 27 at Ex. G.) Therefore, on July 23, 2014, Goldman sent him a letter providing him with copies of the promissory notes on all four loans. (*Id.*) That letter also itemized the "amount due," by breaking down the amount by principal, interest, and collection costs. (*Id.*) Because neither Carney nor Gumpper paid their debts, Goldman filed a Complaint against them, on behalf of HESAA, in the Superior Court of New Jersey (the "State Court Action"). (ECF No. 53-1 ¶ 7 and ECF No. 57-1 ¶ 7.) That action sought collection costs and attorneys' fees in the amount of $21, 211.03 against Carney and $16,689.05 against Gumpper. (ECF No. 53-1 ¶ 8 and ECF No. 57-1 ¶ 8.) Carney and Gumpper represented themselves *pro se* in the State Court action. (ECF No. 57-1 ¶ 20.)

In Carney and Gumpper's State Court Answer to HESAA's Complaint, they denied attorneys' fees were due because:

> It is defendant's understanding that plaintiff's customary retainer agreement provides for a fee only when an amount is actually

collected and is contingent on the amount collected. Under plaintiff's customary retainer agreement, attorney fees are not incurred or calculable until plaintiff's attorney collects some amount from the borrower. Defendant demands plaintiff's counsel to provide strict proof of the attorney fee being sought.

(ECF No. 53-2 at Ex. A ¶ 4.) In addition, Plaintiffs' Tenth Affirmative Defense in their State Court Answer stated, in part:

The plaintiff's attorney, a debt collector, who regularly collects debts is subject to the Fair Debt Collection Practices Act ("FDCPA") . . . . It is defendants' contention that plaintiff's attorney, [Goldman] (1) made false, deceptive, or misleading statements; (2) made false representations and engaged in deceptive means to collect or attempt to collect a debt; and (3) used unfair and unconscionable means to collect or attempt to collect a debt.

(*Id.* at Ex. A, Tenth Affirmative Offense.)

Carney and Gumpper's State Court Answer was eventually stricken for their failure to answer interrogatories. (ECF No. 31-1 ¶ 4; ECF No. 53-1 ¶ 11; and ECF No. 57-1 ¶ 11.) Thereafter, HESAA sought a default judgment against Plaintiffs', which was entered on September 28, 2015. (ECF No. 31-1.) The Judgment was entered in favor of HESAA and against Carney for $149,122.91, plus costs, and against Gumpper for $117,415.45, plus costs. (*Id.*) Included in the judgment amounts were attorney's fees as asserted in HESAA's certification to the State Court. (ECF No. 53-1 ¶14 and ECF No. 57-1 ¶ 14.)

On January 13, 2015, Plaintiffs filed their initial class action complaint ("Initial Complaint") against Goldman. (ECF No. 1.) On February 19, 2015, Goldman filed its Answer, and the parties began to engage in discovery. (ECF No. 5.) On June 17, 2016, Plaintiffs filed an Amended Complaint alleging Goldman violated several provisions of the FDCPA by attempting to collect collection costs when such costs had not been incurred at the time the June 27 Letters were sent. (ECF No. 27.) On August 15, 2016, Goldman moved to dismiss the case for lack of

jurisdiction. (ECF No. 31.) On December 22, 2016, the Court denied the Motion. (ECF Nos. 44 and 45.) On January 2, 2017, Goldman filed an Answer to the Amended Complaint. (ECF No. 46.) On December 13, 2017, Goldman filed a Motion for Summary Judgment and Plaintiffs filed a Motion to Certify Class. (ECF Nos. 53 and 54.) Both motions are opposed. (ECF Nos. 57 and 58.)

## II.  SUMMARY JUDGMENT MOTION

### A.  Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir.

1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985));

*Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders

all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### B. Entire Controversy

Goldman argues Plaintiffs' claims are barred by the entire controversy doctrine because Plaintiffs raised their FDCPA claims before the State Court, but never sought to join Goldman as a party. (ECF No. 53-3 at 9.) Plaintiffs argue Goldman's entire controversy claim is time barred, or alternatively that it does not apply because the FDCPA claims in this matter are not related to the claims in the State Court Action. (ECF No. 57 at 7-14.)

New Jersey's entire controversy doctrine is "an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit." *Chavez v. Dole Food Co.*, 836 F.3d 205, 228 n.130 (3d Cir. 2016). The doctrine

> requires a party to bring in one action all affirmative claims that it might have against another party or be forever barred from bringing a subsequent action involving the same underlying facts. The central consideration is whether the claims arise from related facts or the same transaction or series of transactions.

*Opdycke v. Stout*, 233 F. App'x 125, 129 (3d Cir. 2007) (marks and citations omitted); *see also Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015). The objectives of the doctrine are threefold: "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." *Ditrolio v. Antiles*, 662 A.2d 494, 502 267 (N.J. 1995). The Third Circuit has ruled that "[a] federal court hearing a federal cause of action is bound by New Jersey's Entire Controversy Doctrine, an aspect of the substantive law of New Jersey, by virtue of the Full Faith and Credit Act, 28 U.S.C. § 1738 (1994)." *Litgo N.J., Inc. v.*

*Comm'r N.J. Dep't of Envtl. Prot.*, 725 F.3d 369, 400 n.2 (3d Cir. 2013) (quoting *Rycoline Prods. v. C & W Unlimited*, 109 F.3d 883, 887 (3d Cir. 1997)).

"Under the entire controversy doctrine, a successive action may be precluded where a litigant failed to previously join a necessary party, and where such failure was (1) the result of the litigant's inexcusable conduct; and (2) now results in substantial prejudice to the non-party." *Beale v. Rubin & Rothman, LLC*, No. 08-4279, 2009 WL 1916322, at *3 (D.N.J. June 29, 2009). "The concepts of inexcusable conduct and substantial prejudice are interrelated such that the existence of substantial prejudice will often serve to render the underlying conduct inexcusable." *Ctr. For Prof'l Advancement v. Mazzie*, 347 F. Supp. 2d 150, 156 (D.N.J. 2004). Substantial prejudice "means that a person not joined in an earlier action will be seriously harmed in his or her ability to maintain an adequate defense in a subsequent action." *Id.* Examples of such harm include loss of witnesses, loss of evidence, and fading memories. *Id.* Delay alone does not serve to create substantial prejudice. *Id.*

The leading case setting forth a list of nonexclusive factors to be considered in determining whether the entire controversy doctrine applies in the context of party joinder is *Hobart Bros. Co. v. Nat'l Union Fire Ins. Co.*, 806 A.2d 810, 818 (N.J. Super. Ct. App. Div. 2002). These factors have been summarized by this Court to include the following:

> (1) whether the person not joined in an earlier action is precluded from seeking recovery in a subsequent action; (2) whether a person so precluded can nevertheless be alternatively compensated; (3) whether the failure to join or identify (in a 4:5–1 certification) a person was part of a strategy to thwart the assertion of a valid claim; (4) whether the failure to join or identify a person was unreasonable under the circumstances; (5) whether a person not joined in an action should be charged with constructive knowledge of that action; (6) the extent to which judicial resources were employed in the earlier litigation; and (7) whether a person not joined in an earlier action might be unfairly hampered in their ability to mount a defense, e.g.,

due to loss of evidence, the running of an applicable period of limitations, or other prejudice.

*Ctr. For Prof'l Advancement*, 347 F. Supp. 2d at 156-57 (citing *Hobart Bros. Co.*, 806 A.2d at 818). None of these factors is dispositive. *Id.* The court in *Hobart* cautioned that "preclusion is a remedy of last resort. . . . Courts must carefully analyze both fairness to the parties and fairness to the system of judicial administration before dismissing claims." *Hobart Bros. Co.*, 806 A.2d at 819.

Assuming *arguendo*, Goldman's entire controversy defense is not time barred, the Court finds Goldman has failed to carry its burden of demonstrating that it is entitled to the entire controversy defense. It has failed to demonstrate Plaintiffs engaged in inexcusable conduct or that it was prejudiced. Goldman's argument is that Plaintiffs raised their FDCPA issues before the Superior Court in their State Court Answer, but never sought to join Goldman as a party. (ECF No. 53-3 at 9.) This is not inexcusable conduct and does not implicate any of the above factors.

Turning to the *Hobart* factors, the Court notes that the first two factors, both regarding whether Goldman can recover in the instant action, are inapplicable. As for the third factor, the Court finds no evidence of a deliberate strategy on the part of Plaintiffs to pursue piecemeal litigation. Fourth, because Plaintiffs were *pro se*, the Court finds that their failure to join or identify Goldman was not unreasonable under the circumstances. As to the fifth factor, Goldman is charged with constructive knowledge of the State Court Action, since it was HESAA's counsel. Moreover, judicial resources were not extensively employed in the State Court Action, since the matter did not go to trial, but was instead resolved via default judgment.

Finally, Goldman has failed to demonstrate it will suffer substantial prejudice from its non-joinder in the State Court Action. Indeed, Goldman points to no evidence of harm in Plaintiffs' bringing this litigation. The Court does not find that increased costs of litigation are sufficient

grounds, particularly where Goldman incurred no expenses in the State Court Action because it was not a party. Accordingly, Goldman's Motion for Summary Judgment on the basis of the entire controversy doctrine is **DENIED**.

### C. FDCPA Claims

Congress enacted the FDCPA in 1977 as a result of the abundance "evidence of the use of abusive, deceptive, and unfair debt collection practices" and the inadequacy of existing laws and procedures designed to protect consumers. 15 U.S.C. § 1692(a), (b). At the time, Congress was concerned that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to material instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). The stated purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors" and to promote further action to protect consumers against debt collection abuses. *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 174 (3d Cir. 2015) (quoting 15 U.S.C. § 1692(e)). "The right congress sought to protect in enacting this legislation was therefore not merely procedural, but substantive and of great importance." *Blaha v. First Nat'l Collection Bureau*, No. 16-2791, 2016 U.S. Dist. LEXIS 157575, at *23 (D.N.J. Nov. 10, 2016).

"Because the FDCPA is a remedial statute, we construe its language broadly so as to effect its purpose." *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011) (citing *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)). Accordingly, communications from lender to debtors are analyzed from the perspective of the "least sophisticated debtor." *Brown*, 464 F.3d at 454. "The basic purpose of the least-sophisticated [debtor] standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law." *Id.* at 453 (citation omitted).

The "least sophisticated debtor" standard "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354–55 (3d Cir. 2000) (citation omitted). "Even the least sophisticated debtor is bound to read collection notices in their entirety." *Campuzano–Burgos v. Midland Credit Mgmt.*, 550 F.3d 294, 299 (3d Cir. 2008).

To succeed on an FDCPA claim, a plaintiff must establish: "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014); *see also Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015). Only the fourth prong is disputed here. (ECF No. 52-1 at 7; *see* ECF No. 50-1 and ECF No. 56.) Goldman concedes the first three elements of the FDCPA claims are met, therefore, the only issue before the Court is whether Goldman violated any provisions of the FDCPA.

Plaintiffs assert the June 27 Letters violated 15 U.S.C. § 1692e and § 1692f, the provisions of the FDCPA dealing with communications from debt collectors to debtors. They claim the June 27 Letters violated three specific subsections: § 1692e(2)(A), (10), and § 1692f(1). (ECF No. 27.) Specifically, in their brief, Plaintiffs argue the June 27 Letters violated the FDCPA because it:

1. Fail[ed] to itemize the specific monetary amount it sought to collect for "collection costs" . . . ;
2. Fail[ed] to itemize the specific monetary amount it sought to collect for "interest";
3. Fail[ed] to state whether the "collection costs" were due to Defendant, non-party (creditor), [HESAA]; or some other entity [];
4. Attempted to collect "collection costs" when such "costs" had not been "*incurred*" at the time the debt collection letters were sent . . . . In fact, they were contingency fees, and it was not until

> many months after [Goldman's] debt collection letters were sent[] to Plaintiffs that a New Jersey state court (in a separate, unrelated, action) even determined that Defendant was entitled to "collection costs", and further determined the actual amount of "collection costs" due . . . .

(ECF No. 57 at 1.) However, Plaintiffs raise three of these claims for the first time in their opposition to Goldman's Motion for Summary Judgment. Plaintiffs Amended Complaint only asserts Goldman violated the FDCPA:

> By stating in its collection letters to Plaintiffs and other similarly situated that "There remains due a balance as shown above, which includes interest and collection costs", when in fact if any collection cost are due at all, the amount of such costs is based on a percentage of the amount of the debt *collected* and not based on the amount referred for collections, Goldman used false, deceptive, misleading representations or means in connection with its attempts to collect the alleged debts from plaintiffs and other similarly situated, in violated of 15 U.S.C. § 1692e *et seq.*
>
> . . . .
>
> By demanding an amount for collection cost in its initial and subsequent collection letters to Plaintiffs and other similarly situated when said collection costs were not yet, if at all, due Goldman violated various provisions of the FDCPA, including but not limited to, 15 U.S.C. § 1692e, 15 U.S.C. § 1692e(2)(A), 15 U.S.C. § 1692e(10), 15 U.S.C. § 1692f and 15 U.S.C. § 1692f(1).

(ECF No. 27 ¶¶ 94, 97.) Plaintiffs now attempt to assert three more violations of the FDCPA. However, they cannot amend their Amended Complaint through their arguments at summary judgment. (*Id.*) Plaintiffs cannot pursue claims they never plead in their Amended Complaint. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 286 (3d Cir. 2014) ("[A plaintiff] may not effectively amend its [c]omplaint by raising a new theory of standing in its response to a motion for summary judgment. Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.") (citation omitted). Therefore, the only claim properly before this Court is whether Goldman's June 27 Letters violated the FDCPA because it

> [a]ttempted to collect "collection costs" when such "costs" had not
> been "*incurred*" at the time the debt collection letters were sent . . . .
> In fact, they were contingency fees, and it was not until many
> months after [Goldman's] debt collection letters were sent to
> Plaintiffs that a New Jersey state court (in a separate, unrelated,
> action_ even determined that Defendant was entitled to "collection
> costs", and further determined the actual amount of "collection
> costs" due . . . .

(ECF No. 57 at 1; *see* ECF No. 27.) Therefore, the Court will only address this claim.

### 1.      Whether the June 27 Letters violated § 1692e and/or § 1692f

Plaintiffs argue the June 27 Letters violated the FDCPA because it sought to collect attorneys' fees that were not incurred when the debt letter was sent, considering Goldman's attorneys' fees were based on contingency. (ECF No. 57 at 14-24.) Specifically, Plaintiffs argue "the 'collection costs' stated in [Goldman's] debt collection letters could not have been incurred by that point because [Goldman] was required to have state court decide it was entitled to the 'collection costs,' and that it was entitled to a specific amount." (*Id.* at 19.) Goldman argues its attorneys' fees were properly included in the June 27 Letters because those costs were due when Plaintiffs' loans went into default. (ECF No. 53-3 at 18 and ECF No. 61 at 10.)

Section 1692e(2)(A) of the FDCPA prohibits false representation of "the character, amount or legal status of any debt." Section 1692e(10) which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). Section 1692f is directed toward preventing unfair practices by debt collectors and provides, in part, that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Plaintiff alleges Goldman specifically violated section 1692f(l), which provides that "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such

amount is expressly authorized by the agreement creating the debt or permitted by law" is a violation. 15 U.S.C. § 1692f(l).

"A debt collection letter is deceptive where 'it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" *Brown*, 464 F.3d at 455 (quoting *Quadramed*, 225 F.3d at 354). *Accord McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240 (3d Cir. 2014); *Genova v. IC Sys., Inc.*, No. 16-5621, 2017 WL 2289289, at *1 (D.N.J. May 25, 2017); *Ardino v. Solomon & Solomon, P.C.*, No. 13–1821, 2014 WL 268680 (D.N.J. Jan. 23, 2014); *Hernandez v. Miracle Fin., Inc.*, 2011 WL 6328216 (D.N.J. Dec. 13, 2011).

In *McLaughlin*, the plaintiff received a letter from a debt collector stating that the amount of his debt was $365,488.40, which included $650 in attorneys' fees and $550 for costs of suit and a title search. 756 F.3d at 243. However, the fees and costs had not actually been incurred as of the date the plaintiff received the letter and therefore, the plaintiff argued the communication contained false representations as to the amount of his underlying debt to the bank. *Id.* The Third Circuit rejected the debt collector's argument that the letter did not violate the FDCPA because it contained an estimate of the amount owed. *Id.* at 246. Instead, it found that nothing in the letter conveyed to the debtor that the amount listed was an estimate. *Id.* The Third Circuit noted, "[t]he only message this conveys to the reader is the amount owed on a specific date," and "[a]s the drafter of the [l]etter, [the debt collector] is responsible for its content and for what the least sophisticated debtor would have understood from it." *Id.* The Third Circuit found the plaintiff stated a plausible claim that the "[l]etter misrepresents the amount of the debt in violation of § 1692e(2) and (10)." *Id.* Consequently, it reversed the district court's order granting the debt collector's motion to dismiss the plaintiff's FDCPA claims. *Id.* at 250.

In *Genova*, the plaintiff incurred a debt to Preventative Healthcare Association ("PHA"). 2017 WL 2289289, at *1. PHA hired the Defendant to collect the debt and sent the plaintiff a letter in attempt to collect on the debt. *Id.* The letter included a collection charge, namely a 17% contingent fee, which represented the defendant's anticipated compensation if it successfully collected on the debt. *Id.* This Court found that "because the PHA by its terms only required the consumer to pay any fees 'incurred,' [the d]efendant was not 'expressly authorized' to seek the Collection Charge, which represented an estimate of costs that had not yet been incurred or earned." *Id.* at 5.

In *Ardino*, an attorney entered into a retainer agreement with the plaintiff's creditor that provided the attorney with a contingency fee of 22% for any amount collected from the debtor. 2014 WL 268680 at *1–2. The plaintiff took out a student loan and executed a promissory note agreeing to "pay all amounts, including reasonable collection agency and attorneys' fees and court and other collection costs that you incur in effecting collection of this Note, up to the maximum penalty permitted by law." *Id.* at *2. When the plaintiff defaulted on his loan, the attorney sent him a collection letter stating he owed the principal amount left on his loan, as well as attorneys' fees representing 22% of that amount. *Id.* at *1. However, the district court found the collection letter in violation of § 1692e because it failed to notify the plaintiff that "the attorneys' fees were not due until actually incurred, and that they would be calculated on a contingent basis." *Id.* at *4. Further, the Court noted that "[w]hile the [the plaintiffs] agreed to pay costs incurred by [the creditor], they did not agree to pay—and [the defendant] had no basis to demand—a prospective or estimated fee." *Id.* Therefore, the Court denied the defendant's motion to dismiss the plaintiff's FDCPA claim.

In *Hernandez*, the debt collector sent letters to the plaintiff stating that its collection fee was due and owing, even though the debt collector's agreement with the creditor was contingent and the creditor had not yet incurred any collection charges. 2011 WL 6328216 at *1–3. This Court held that:

> under the least sophisticated debtor standard, Plaintiff states a claim sufficient to state a plausible right to relief regarding the inclusion of a contingent fee not yet charged to which Verizon was only entitled in the event of successful collection. These allegations are sufficient to state a plausible right to relief under 15 U.S.C. § 1692e.

*Id.* at *10 (citing *Gathuru v. Credit Control Services, Inc.*, 623 F. Supp. 2d 113, 121–22 (D. Mass. 2009)).

The cases Goldman cites in support of its argument do not persuade the Court. The underlying agreements at issue in most cases cited to by Goldman did not state plaintiffs had agreed to pay only those costs "which the lender or subsequent holder of the Promissory Note *incurs in collecting* this loan." (ECF No. 27 ¶ 72; ECF No. 53-1 ¶ 3; ECF No. 57-1 ¶ 3 (emphasis added).) The cases also did not limit the collection fee to costs actually incurred, and the one case that did is not binding on this Court. The Court will briefly address some of these cases.

*New Jersey Higher Education Assistance Authority v. Martin*, 628 A.2d 365 (N.J. Super. Ct. App. Div. 1993), states that a note provision requiring payment of counsel fees in the event of default is enforceable, and that a court may not award less than the full amount of fees incurred. *Id.* at 367-68. The issue before this Court is different and more nuanced. Next, Goldman points to *Shapiro v. Riddle & Assoc., P.C.*, 240 F. Supp. 2d 287 (S.D.N.Y. 2003) and *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004) for support. Neither of these cases limited the collection of attorneys' fees to "actually incurred" or deal with contingency fees. Instead, they dealt with authorized "reasonable" attorneys' fees.

Lastly, while the fee arrangement in *Murr v. Tarpon Fin. Corp.*, No. 10- 372, 2014 WL 546690, at *8 (E.D. Tenn. Feb. 10, 2014) was contingent on sums collected and the court found "[t]here is simply nothing improper about basing an attorney's fee on the percentage of debt," that case is not binding on this Court or persuasive because there are Third Circuit cases and District Court cases in this District directly on point.

Here, much like M*cLaughlin*, *Genova, Ardino*, and *Hernandez*, Plaintiffs signed promissory notes in favor of HESAA, which stated, "I will pay all charges, collection costs and all other costs that are permitted under this Note for the collection of this loan, which the lender or subsequent holder of the Promissory Note incurs in collecting this loan." (ECF No. 27 ¶ 72; ECF No. 53-1 ¶ 3; ECF No. 57-1 ¶ 3.) However, no fees or costs had actually been incurred as of the date Plaintiffs received the June 27 Letters. Plaintiffs agreed only to pay costs incurred; they did not agree to pay a prospective or estimated fee. Because the terms of the promissory notes only required Plaintiffs to pay fees "incurred" and no such fees were incurred, Goldman violated § 1692e(2)(A), (10) and § 1692f, (f)(1) by stating in the June 27 Letters, "There remains due a balance as shown above, which includes interest and collection costs." (ECF No. 27 at Ex. E and Ex. F.) In stating a balance was due, which included collection costs, Goldman misrepresented "the character, amount or legal status of any debt" and used "unfair or unconscionable means to collect or attempt to collect any debt." Because § 1692e(10) "is a catchall-type provision prohibiting '[t]he use of any false representation or deceptive means to collect . . . any debt,'" *Rosenau v. Unifund Corp.*, 539 F.3d 218, 224 (3d Cir. 2008), and Plaintiffs' § 1692e(10) claim is premised on the same language or theories as the § 1692e and § 1692f claim, the analysis of the § 1692e and § 1692f is dispositive. *Grubb v. Green Tree Servicing, LLC*, No. 13-07421, 2014 WL 3696126, at *11 (D.N.J. July 24, 2014); *see Caprio v. Healthcare Revenue Recovery Grp., LLC*,

709 F.3d 142, 155 (3d Cir. 2013) ("Because we have concluded that the District Court committed reversible error by granting judgment on the pleadings as to the § 1692g claim, we must reach the same conclusion with respect to the claim brought under § 1692e(10)."); *Vasquez v. Gertler & Gertler, Ltd.*, 987 F. Supp. 652, 659 (N.D. Ill. 1997) (wholly resting its finding that defendant did not violate § 1692e on its finding that defendant did not violate § 1692g); *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 25–26 (2d Cir. 1989) (holding that the "the vagueness of the language" in a notice suggested defendant would take actions it did not intend to take and therefore violated both §§ 1692e(5) and (10)).

Accordingly, Goldman's Motion for Summary Judgement is **DENIED**. However, the only claim that will proceed is that Goldman's June 27 Letters violated the FDCPA because it

> [a]ttempted to collect "collection costs" when such "costs" had not been "*incurred*" at the time the debt collection letters were sent . . . . In fact, they were contingency fees, and it was not until many months after [Goldman's] debt collection letters were sent to Plaintiffs that a New Jersey state court (in a separate, unrelated, action) even determined that Defendant was entitled to "collection costs", and further determined the actual amount of "collection costs" due . . . .

(ECF No. 57 at 1; *see* ECF No. 27.)

## III.   CLASS CERTIFICATION

### A.   Standard of Review

The Third Circuit has consistently observed that "Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and counsel's ability to fairly and adequately protect class interests." *In re Comm. Bank of N. Va.,* 622 F.3d 275, 291 (3d Cir. 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 799 (3d Cir. 1995) (alterations omitted). Rule 23 contains two sets of

requirements. First, a party seeking class certification must demonstrate the class satisfies the requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy].

Fed. R. Civ. P. 23(a).

Second, plaintiffs must show that the requirements of one of the provisions of Rule 23(b) are met. Because Plaintiffs here seek certification under Rule 23(b)(3), the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are known as predominance and superiority. *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009).

Importantly, the Third Circuit has instructed that "each Rule 23 component [must] be satisfied" in order for a court to certify a class. *In re Hydrogen Peroxide*, 552 F.3d 305, 310 (3d Cir. 2008) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 630 (1997). In that regard, "[c]lass certification is an especially serious decision, as it 'is often the defining moment in class actions (for it may sound the 'death knell' of the litigation on the part of plaintiffs, or create unwarranted pressure to settle [non-meritorious] claims on the part of defendants)." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 162 (3d Cir. 2001). In *Hydrogen Peroxide*, the Third Circuit urged district courts, where appropriate, to "'delve beyond the pleadings to determine whether the requirements for class certification are satisfied.' " 552 F.3d at 316 (quoting *Newton*, 259 F.3d at 167). "An overlap between a class certification requirement and

the merits of a claim is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met." *Id.* Importantly, the predominance inquiry is especially dependent upon the merits of a plaintiff's claim, since "the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual." *Id.* at 310-11 (citations omitted). "'If proof of the essential elements of the cause of action requires individual treatment,'" then predominance is defeated and a class should not be certified. *Id.* (quoting *Newton*, 259 F.3d at 172); *see In re Constar*, 585 F.3d at 780.

### B. Ascertainability

Before addressing Rule 23's requirements for class certification, Goldman, as a preliminary matter, argues Plaintiffs' proposed class, as defined, is unascertainable. (ECF No. 58 at 9-12.) Specifically, Goldman argues Plaintiffs are bound by the class definition they proposed in their Amended Complaint and that the Court should not consider their revised definition provided in their Motion for Class Certification. (*Id.*) Goldman further argues that because Plaintiffs' class definition in their Amended Complaint is a "fail-safe" class, it is unascertainable. (*Id.*) The Court disagrees. "Plaintiff[s] [are] not bound by the class definitions proposed in [their] Amended Complaint, and the Court can consider Plaintiff[s'] revised definitions, albeit those revisions [being] made in [their] motion for class certification." *Kalow & Springut, LLP v. Commence Corp.*, 272 F.R.D. 397, 402 (D.N.J. 2011), *on reconsideration in part*, No. 07-3442, 2011 WL 3625853 (D.N.J. Aug. 15, 2011). Therefore, the Court can and will consider Plaintiffs' new definition of the class they propose in their Motion.[1]

---

[1] Goldman does not argue Plaintiffs' new class definition is a "fail-safe" class. Accordingly, Goldman's argument that Plaintiffs' class definition in their Amended Complaint is a "fail-safe" class is **MOOT**. As such, the Court will not address that issue.

Prior to determining whether the requirements of Rule 23 have been met, the Court must first analyze whether Plaintiffs' new proposed class definition is "readily ascertainable based on objective criteria." *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 478 (D.N.J. 2009). In order to determine whether a proposed class is ascertainable, the Court must engage in a two part analysis. First, the Court must determine whether the defined class specifies "a particular group that was harmed during a particular time frame, in a particular location, in a particular way." *Rowe v. E.I. Dupont De Nemours & Co.*, 262 F.R.D. 451, 455 (D.N.J. 2009). Second, the Court must be able to ascertain the class's membership in an objective manner. *Id.*; *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (finding the Third Circuit has implemented a two-fold inquiry requiring a plaintiff to show: "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition").

Significantly, in demonstrating ascertainability, a plaintiff need not identify every class member at the class certification stage; instead, a plaintiff is required to show that "class members can be identified." *Byrd*, 784 F.3d at 163 (citation omitted) (emphasis in original). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012).

Here, Plaintiffs have satisfied the requirement of defining an ascertainable class. Plaintiffs' class definitions are comprised of objective criteria and factors, and, therefore, are capable of being ascertained. Plaintiffs have proposed the following definition of the class:

> All New Jersey Consumers who were sent notices or letters from [Goldman] prior to [Goldman] obtaining a judgment, against the such consumer, during the period between January 13, 2014 and March 20, 2017, concerning a debt allegedly owed to New Jersey

Higher Education Student Assistance Authority, which stated in part:

"There remains due a balance as show above, which includes interest and collection costs."

(ECF No. 54-1 at 5.) This definition identifies a particular group, New Jersey Consumers; a particular time frame; and the harm to the group, receiving a letter stating, "There remains due a balance as show above, which includes interest and collection costs." (*Id.*) As discussed above in the Motion for Summary Judgment section, *supra*, receiving the June 27 Letters is indeed the harm that is the basis of Plaintiffs' FDCPA allegations in this case.

Plaintiffs have demonstrated an objective way to ascertain who is a member of the class. Indeed, Plaintiffs allege:

No mini-trial or burdensome individual fact-finding would be necessary because the mechanism for identifying Class members would only require a relatively straightforward examination of Goldman's business records to find those individuals who meet the class definition. In fact, Plaintiff respectfully submits that this has already been completed by Goldman and there were 437 New Jersey consumers who were sent a letter/notice from Goldman, which fits squarely within the class definition.

(ECF No. 54-1 at 8.) Thus, Plaintiffs are capable of ascertaining the putative class members.

## C. Rule 23(a) Inquiry

Next, the Court must determine whether Plaintiffs have satisfied the prerequisites for maintaining a class action as set forth in Rule 23(a). Goldman only addresses adequacy. Specifically, it argues Plaintiffs are not adequate class representatives and their counsel cannot adequately represent the class. (ECF No. 58 at 13-21.) Nevertheless, the Court will address all elements briefly.

### i. Numerosity

With respect to numerosity, a party need not precisely enumerate the class members to proceed as a class action. *In re Lucent Tech. Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 640 (D.N.J. 2004). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (citing 5 James Wm. Moore et al., Moore's Federal Practice S 23.22[3][a] (Matthew Bender 3d ed. 1999)).

Here, Goldman's discovery responses identified at least 437 New Jersey Consumers that received notices or letters from Goldman prior to Goldman obtaining a judgment against the consumer, during the class period, which stated in part, "There remains due a balance as shown above, which includes interest and collection costs." (ECF No. 54-1 at 9.) Accordingly, it appears the potential number of plaintiffs far exceeds the number generally deemed to satisfy the numerosity requirement. *See Marcus*, 687 F.3d at 595. Therefore, the Court finds numerosity is satisfied.

### ii. Commonality

Commonality requires there to be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold for establishing commonality is straightforward: "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 596-97 (3d Cir. 2009) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)). Indeed, as the Third Circuit pointed out, "[i]t is well established that only one question of law or fact in common is necessary to satisfy the commonality requirement, despite the use of the plural 'questions' in the

language of Rule 23(a)(2)." *In re Schering Plough*, 589 F.3d at 97 n.10. Thus, there is a low threshold for satisfying this requirement. *Newton*, 259 F.3d at 183; *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986) (highlighting that the threshold of commonality is not high (citations omitted)).

Moreover, this requirement does not require all putative class members to share identical claims, *see Hassine v. Jeffes*, 846 F.2d 169, 176-77 (3d Cir. 1988), "factual differences among the claims of the putative class members do not defeat certification." *Baby Neal*, 43 F.3d at 56. In that regard, class members can assert a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are subject to the same harm will suffice. *Hassine*, 846 F.2d at 177-78. "Even where individual facts and circumstances do become important to the resolution, class treatment is not precluded." *Baby Neal*, 43 F.3d at 56.

This case presents numerous questions of law and fact that are common to all class members, as demonstrated by the Motion for Summary Judgment, each member received a letter or notice from Goldman prior to Goldman obtaining a judgment against the consumer, during the class period, which stated in part, "There remains due a balance as show above, which includes interest and collection costs." (ECF No. 54-1 at 9.). Insofar as Plaintiffs allege the letters violated the FDCPA, those violations and related remedies would apply to all class members.

### iii.     Typicality

Rule 23(a)(3) requires that the representative's claim be typical of the members of the class. "The concepts of commonality and typicality are broadly defined and tend to merge, because they focus on similar aspects of the alleged claims." *Newton*, 259 F.3d at 182. "Both criteria seek to assure that the action can be practically and efficiently maintained and that the interests of the absentees will be fairly and adequately represented." *Baby Neal*, 43 F.3d at 56; *see Gen. Tel. Co.*

*of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Despite their similarity, commonality—like numerosity—evaluates the sufficiency of the class itself, and typicality—like adequacy of representation—evaluates the sufficiency of the named plaintiff. *See Hassine*, 846 F.2d at 177 n.4; *Weiss v. York Hosp.*, 745 F.2d 786, 810 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060 (1985).

Specifically, Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims of the class." *See* Fed. R. Civ. P. 23(a)(3). Typicality acts as a bar to class certification only when "the legal theories of the named representatives potentially conflict with those of the absentees." *Georgine v. Amchem Prods.*, 83 F.3d 610, 631 (3d Cir. 1996); *Newton*, 259 F.3d 183. "If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." *Id.* at 184. In other words, the typicality requirement is satisfied as long as representatives and the class claims arise from the same event or practice or course of conduct and are based on the same legal theory. *Brosious v. Children's Place Retail Stores*, 189 F.R.D. 138, 146 (D.N.J. 1999).

Here, typicality is clearly satisfied because Plaintiffs' claims arise from the same course of conduct that gave rise to the claims of all other class members and are based on the same legal theory. Thus, the typicality requirement of Rule 23(a)(3) is met.

### iv. Adequacy

A class may not be certified unless the representative class members "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Rule 23(a)'s adequacy of representation requirement 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333, 343 (3d Cir. 2010) (quoting *Amchem*, 521 U.S. at 625). Class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* (citation omitted).

This requirement has traditionally entailed a two-pronged inquiry: first, the named plaintiff's interests must be sufficiently aligned with the interests of the absentees; and second, the plaintiff's counsel must be qualified to represent the class. *Gen. Motors*, 55 F.3d at 800. A named plaintiff is "adequate" if his interests do not conflict with those of the class. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998). Pursuant to Rule 23(g), adequacy of class counsel is considered separately from the determination of the adequacy of the class representatives.

Goldman argues Gumpper is an inadequate class representative because he has "abdicated responsibility for the litigation to his family and attorneys." (ECF No. 58 at 13.) As to Carney, Goldman argues he is "inadequate because his situation as a long-time crusader for student loan reform makes him so different from that of the rest of the putative class that his claims are not even close to being typical." (*Id.* at 13-14.)

"[A] class representative 'need only possess a minimal degree of knowledge necessary to meet the adequacy standard.'" *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 296 F.R.D. 299, 316 (D.N.J. 2013) (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)). "[A] proposed representative's lack of particularized knowledge concerning the dispute at issue 'does not render [a class representative] inadequate . . . [if] she has retained adequate counsel to represent her.'" *Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 120 (D.N.J. 2003) (quoting *Ettinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 122 F.R.D. 177, 182 (E.D. Pa. 1988)).

As a preliminary matter, Goldman fails to identify a specific conflict between Plaintiffs and the potential class members. Nor does the Court find that a conflict exists between them, as

this dispute against Goldman stems from the same alleged unlawful conduct, the misleading content in Goldman's notice/letters.

The Court finds Gumpper possesses the "minimal degree of knowledge" required of a class representative. Indeed, during his deposition, he was asked to explain the claim he is bringing against Goldman and stated, "Mr. Goldman is trying to collect attorney fees that he is not entitled to because of a letter that was sent to me where . . . as far as I know because he hasn't collect any of the outstanding debt he wasn't allowed to charge me attorney fees at the time that I got a letter in the mail." (ECF No. 59 7:20-8:5.) He further stated, "I know that because the amount of the complaint can change and his attorney fees are based on a percentage that he can't collect any of his attorney gees before he collects money from me." (*Id.* at 8:13-17.) To the extent Gumpper lacks knowledge regarding the legal aspects of his case, the Court finds that does not render him inadequate because as will be articulated below, he has retained adequate counsel to represent him. *Szczubelek*, 215 F.R.D. at 120.

The Court further finds Carney's interests are not antagonistic to those of the class. The fact that Carney is a strong advocate of student loan reform does not render him an inadequate class representative. Carney's claims are typical of all the other class members who were sent the same form letter. Goldman provides no evidence demonstrating Carney merely brought this suit for institutional reform. As such, the Court finds both class representatives to be adequate.

Rule 23(g) also requires a court to assess the adequacy of proposed class counsel. To that end, the Court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Nafar v.*

*Hollywood Tanning Sys., Inc.*, No. 06-CV-3826, 2008 WL 3821776, at *7 (D.N.J. Aug. 12, 2008). Lead counsel, Jones, Wolf & Kapasi, LLC, is experienced in handling complex litigation, including FDCPA cases, and has represented plaintiffs in over 250 consumer cases FDCPA cases in the State of New York and New Jersey. (*See* ECF No. 54-1 at 11-12.) *See, e.g., Hegab v. Family Dollar Stores, Inc.*, No. 11-1206, 2015 WL 1021130, at *21 (D.N.J. Mar. 9, 2015) ("Class Counsel . . . have extensive experience litigating complex class actions. . . . , [thus] the Court finds that Class Counsel has the qualifications, experience, and ability to conduct the litigation."). Goldman's argument that counsel is inadequate because it is named as a defendant in a class action lawsuit is meritless. In fact, The Honorable John Michael Vazquez, USDJ, granted Jones, Wolf & Kapasi, LLC's motion to dismiss the Complaint in that action. *Winters v. Jones*, No. 16-9020, 2018 WL 326518 (D.N.J. Jan. 8, 2018). Accordingly, counsel is qualified and experienced in consumer action litigation and more than adequate to represent Plaintiffs and the class.

### D.       Rule 23(b)(3) Factors: Common Questions Predominate and the Class Is Superior to Other Methods of Adjudication

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish the proposed class meets the requirements of Rule 23(b)(3). To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to the members of the class predominate over any question affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3) requires that "a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In this case, both considerations weigh in favor of class certification.

Here, Plaintiffs satisfy the predominance and superiority criteria of Rule 23(b)(3). In determining whether common questions predominate, courts have focused on the claims of liability

against defendants. *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977); *Smith v. Suprema Specialties, Inc.*, No. 02-168, 2007 WL1217980, at * 9 (D.N.J. 2007) (citations omitted) ("The focus of the predominance inquiry is on liability, not damages."). When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d, § 1788, at 528 (1986).

In this FDCPA action, Goldman's alleged liability arises from issuance of the June 27 Letters or notice sent prior to Goldman obtaining judgment stating, "There remains due a balance as shown above, which includes interest and collection costs." (ECF No. 54-1 at 5.) Whether the Letters violated the FDCPA is the central issue in this case and predominates over any individual issue. Here, the existence of common questions and their predominance over individual issues are exemplified by the fact that if every class member were to bring an individual action, each plaintiff would be required to demonstrate the letters or notices violated the FDCPA. The Court finds, therefore, the predominance criteria of Rule 23(b)(3) is met.

The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Prudential Ins. Co.*, 148 F.3d at 316 (internal citations omitted); *In re Warfarin*, 391 F.3d at 532-33. The Court concludes class action is appropriate because it would be more efficient to try these plaintiffs together, when compared to other means of adjudication. Accordingly, Plaintiffs' Motion to Certify Class is **GRANTED**.

## IV.    NOTICE TO CLASS

Rule 23(c)(2)(B) requires that the members of a Rule 23(b)(3) class, as in this case, be given notice of the nature of the action, the definition of the class certified, the opportunity to opt

out of the class and mechanism for doing so, and other important information that is "clearly and concisely state[d]" in "plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B). Such notice must be given to all persons who can be identified through reasonable effort. *Id.* In the present case, such notice must now be proposed by class counsel, for Court approval, to apprise the individuals in this class regarding their rights and options. In light of the fact that Goldman's Motion for Summary Judgment has been denied. Such notice regarding the conduct of the action is permitted in the Court's discretion under Rule 23(d)(1)(B) and will be required here within the forthcoming Rule 23(c)(2)(B) notice.

Accordingly, counsel shall confer regarding the approval form of class notice, and class counsel, within thirty (30) days of entry of the accompanying Order, shall submit an appropriate motion for approval of class notification for the Court's approval.

## V. CONCLUSION

For the reasons set forth above: (1) Goldman's Motion for Summary Judgment is **DENIED** and (2) Plaintiffs' Motion to Certify class is **GRANTED**. Counsel shall confer regarding the approval form of class notice, and shall, within thirty (30) days of entry of the accompanying Order, submit an appropriate motion for approval of class notification for the Court's approval.

**Date:** May 30, 2018                                    */s/ Brian R. Martinotti*_____
                                                          **HON. BRIAN R. MARTINOTTI**
                                                          **UNITED STATES DISTRICT JUDGE**